OPINION OF THE COURT
Stanley Parness, J.
Petitioner, owner of premises 112-114 West 14th Street, New York, New York, moves to vacate the determination of respondent, New York City Loft Board, which denied as premature his application to decover this interim multiple dwelling (IMD) from the requirements of article 7-C of the Multiple Dwelling Law. The application was based on the *598 failure of tenants to file “grandfathering” * applications to establish their residential status with the Department of City Planning before the expiration of the June 21, 1983 dateline. It also moved to amend the IMD registration to reflect 5 rather than 6 residential units, claiming the second floor west loft was erroneously registered as residential.
Respondent denied the application to amend as untimely made beyond the prescribed 30-day time limit in which to contest coverage under New York City Loft Board Regulations (Relating to Registration of Interim Multiple Dwellings) §2 (A) (5). Respondent further ruled that tenants’ failure to timely file “grandfathering” applications did not render residential use impermissible. It observed that New York City Zoning Resolution §§ 15-211 and 15-212 provide alternative bases to retain Loft Law coverage of the premises dependent on the total floor area preserved for commercial or permitted manufacturing use in the premises. Zoning Resolution § 15-211 requires proof of the existence of 50% commercial floor area, while Zoning Resolution § 15-212 requires proof of only 33Vi%. The computation of total floor area under Zoning Resolution § 15-211 is based on the size of the building lot applied to the numerical table made part of that section. Under Zoning Resolution § 15-212, a lesser percentage is permissible and the owner may file an application with the Chairman of the City Planning Commission for a “non-discretionary certification” of reduced commercial floor preservation of 33V2%. Were such certification to be obtained, the Loft Board would be authorized to reject the application to decover. Section 284 of the Multiple Dwelling Law places the burden on the owner of an IMD within the time constraints therein provided to file for and obtain an approved alteration permit in compliance with safety and fire protection and to obtain a certificate of occupancy as a class A multiple dwelling.
The tenants in the subject premises submitted to respondent that 2 Vi floors were commercial and 2 Vi floors residential, *599 thereby alleging compliance with the 50% requirement of Zoning Resolution § 15-211. This was rejected by respondent as "portions” of floors under this section are not permitted to be included but require, in computation, the addition of the next whole floor. In this case, proof of three whole commercial floors would thereby be required. Respondent then ruled that the possibility, nevertheless, existed of obtaining a "non-discretionary certification” from the Chairman of the City Planning Commission pursuant to Zoning Resolution § 15-212 of reduced commercial floor area of 33Vi%. It, therefore, denied petitioner’s application to decover as premature and directed petitioner to seek such certification. It is this ruling which is at the heart of this CPLR article 78 proceeding which petitioner seeks to vacate as arbitrary and capricious.
Respondent based its ruling upon Multiple Dwelling Law § 284 (1) (i) (B) which provides: "1. (i) the owner of an interim multiple dwelling * * * (B) shall take all reasonable and necessary action to obtain an approved alteration permit”. Respondent, in this proceeding, points to section 281 (2) (i) as furnishing further authority to require reference of the issue of reduced commercial floor area to the City Planning Commission. This section, in defining an "interim multiple dwelling”, provides that term includes: "buildings * * * in which the local zoning resolution permits residential use as of right, or by minor modification or administrative certification of a local planning agency” (emphasis added). The terms "minor modification” and "administrative certification” as so used have been interpreted by one court to refer to: "various procedures which may be specified in the Zoning Resolution in addition to the grandfathering determinations of occupancy, concerning non-discretionary actions by the agency to which an application must be made”. (5 W. 20th St. Corp. v New York City Loft Bd., NYLJ, Dec. 18, 1985, at 12, col 5, at 13, col 1.) In so ruling herein, respondent implied the possibility of the issuance of a "non-discretionary certification” for reduced floor preservation under Zoning Resolution § 15-212 which, it concluded, was the owner’s obligation to pursue under section 281 (2) (i) of the Multiple Dwelling Law before an order of decoverage could properly be granted.
Petitioner disputes this conclusion and urges it is exempt from seeking such modification based on provisions of section 281 (2) of the Multiple Dwelling Law which further define the term "interim multiple dwelling” to include only "(i) buildings * * * located in a geographical area in which the local zoning *600 resolution permits residential use as of right, or by minor modification or administrative certification of a local planning agency, (ii) buildings * * * not owned by a municipality, (iii) buildings * * * within an area designated by the local zoning resolution as a study area for possible rezoning to permit residential use, or (iv) buildings * * * which may be converted to residential use pursuant to a special permit granted by a local planning agency.”
In the cases under paragraphs (i), (iii) and (iv), this section further provides: "the provisions of subdivision one of section [284] of this article regarding compliance with this chapter shall not be applicable”. (Multiple Dwelling Law § 281 [2].)
As already alluded to, the provisions of section 284 (1) set forth the time limitations for an owner to file and obtain an alteration permit, to achieve safety and fire protection and to obtain a class A multiple dwelling certificate of occupancy. Referring to the cases under paragraphs (i), (ii), (iii) and (iv), section 281 (2) provides: "the provisions of [section 284 (1)] of this article regarding compliance with this chapter shall not be applicable, but the other provisions of this article shall be applicable.” This clause clearly refers to the time constraints for an owner to do the things enumerated in section 284 (1) and not to exemption from coverage. This conclusion is reinforced by the sentence next following which further provides that upon rezoning, granting of special permit, minor modification or administrative certification, section 284 (1) shall be applicable, "with the timing of compliance requirements set forth in such section commencing to run upon the effective date of such rezoning or permit approval.” (Multiple Dwelling Law § 281 [2].) Thus, it is clear it is the timing of compliance requirements that are suspended and not the obligation of the owner to comply with coverage requirements. In being directed to obtain the certificate under Zoning Resolution § 15-212, the premises did not thereby become exempt from Loft Law jurisdiction.
Further, the "special permit” referred to in section 281 (2) (iv) is not the same as the "non-discretionary certification” which petitioner was directed to seek. This section will not support petitioner’s argument for exemption. A "special permit” as used in this article is defined by the Loft Board, pursuant to the authority granted it under the City Charter, Multiple Dwelling Law and Executive Order, as: "a grandfathering procedure specified in the Zoning Resolution which involves a discretionary determination and approval by the *601 City Planning Commission, to which the application must initially be made, and by the Board of Estimate.” (NY City Loft Bd Regs [Relating to Determination of Interim Multiple Dwelling Status] § I [A] [2] [b].)
The respondent’s order directed the owner to file for a "non-discretionary certification”, clearly not the "special permit” referred to in section 281 (2) (iv). It therefore fails to provide any support for petitioner’s argument for exemption under this section.
In view thereof, respondent could properly direct petitioner to take "all reasonable and necessary action” to obtain a building permit for residential IMD units and do so without resulting in an exemption of the building from Loft Law requirements. Its order dismissing petitioner’s application for decoverage as premature was neither arbitrary nor capricious.
Nor can respondent’s denial of the application to amend its IMD registration from 6 to 5 residential units as untimely be so deemed. Section 2 (A) (5) of the New York City Loft Board Regulations (Relating to Registration of Interim Multiple Dwellings) duly promulgated under the authority stated and filed January 27, 1983 provides that all applications to contest coverage of individual units by owners must be received by the Loft Board within 30 days of the issue date of the IMD registration number or within 30 days after promulgation of coverage regulations by the Loft Board, whichever is later. Petitioner concedes this was not timely done due to its inadvertence. No basis to exonerate that omission is presented upon which to find that respondent’s denial was other than correct.
The petition is dismissed.

 Grandfathering is defined by the New York City Loft Board as an administrative process by which a residential unit, located where residential use is not otherwise permitted by the Zoning Resolution, is determined by the agency designated in the Zoning Resolution to have been residentially occupied on a specified date and is therefore a legal residential use as of right, eligible for Multiple Dwelling Law article 7-C coverage. It may also be accomplished by a special permit process which requires a further discretionary approval in addition to determination of occupancy on a specified date. (Pursuant to NY City Charter § 1105; Multiple Dwelling Law art 7-C; Mayor’s Executive Order No. 66.)